**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BYRAN FRANCIS,**

                            **Plaintiff,**

     **vs.**                                      **9:15-cv-00901**
                                                  **(MAD/ATB)**

**KIMBERLY FIACCO and**
**JOHN DOE 1 through10, Individually**
**and in their Official Capacities as Employees**
**of New York Department of Corrections and**
**Community Supervision,**

                            **Defendants.**
_____

**APPEARANCES:** **OF COUNSEL:**

**TABNER, RYAN AND KENIRY, LLP**    **WILLIAM RYAN, JR., ESQ.**
18 Corporate Woods Boulevard              **BRIAN M. QUINN, ESQ.**
Albany, New York 12211-2605
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE**    **MELISSA A. LATINO, AAG**
**ATTORNEY GENERAL**
Albany Office
The Capitol
Albany, New York 12224
Attorneys for Defendant Kimberly Fiacco

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      On January 13, 2014, Plaintiff Byran Francis ("Plaintiff") commenced this action in the

United States District Court for the Southern District of New York, seeking monetary damages

against the State of New York (the "State"), the Department of Corrections and Community

Supervision ("DOCCS"), and John Doe 1 through 10, as unknown employees of DOCCS ("John Does"). *See* Dkt. No. 1. At a pre-motion conference, the District Court, upon consent of the Parties, dismissed the State and DOCCS from the action. *See* Dkt. Nos. 4 and 5. The District Court granted Plaintiff's motions to amend the complaint to name Defendant Kimberly Fiacco, also known as Kimberly Davidson, ("Defendant") and to change venue to the Northern District of New York. *See* Dkt. Nos. 7, 8, 9. On July 31, 2015, Plaintiff filed an amended complaint (the "complaint") with this Court, seeking monetary damages against Defendant, in her individual and official capacity, and John Does, in their individual and official capacities, ("John Does"). *See* Dkt. No. 13. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1988, and he also asserts claims under state law. *See* Dkt. No. 13. Presently before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). *See* Dkt. No. 27.[1]

## II. BACKGROUND

On September 8, 2006, Plaintiff was sentenced, pursuant to a plea agreement, by New York State Supreme Court, County of Erie, (Wolfgang, J.) to an indeterminate sentence of one and one-half years to three years (1½ to 3) to run concurrently with a federal sentence scheduled to be imposed at a later time. *See* Dkt. No. 13 at ¶¶ 14-16. Thereafter, on November 27, 2006, Plaintiff was sentenced to ten years in U.S. District Court for the Western District of New York (Skretny, J.). *See id.* at ¶ 17; Dkt. No. 27-2 at 12-13. Plaintiff was committed to the custody of the United States Bureau of Prisons ("Bureau of Prisons") on November 27, 2006. *See* Dkt. No. 27-2 at 13. On September 28, 2012, Plaintiff was ordered released from federal custody, but,

---

[1] At this time, there has been no appearance on behalf of John Does. *See* Dkt. No. 27.

before he was released, Defendant filed a detainer with the Bureau of Prisons, which instructed the federal facility to continue to incarcerate him pursuant to a certified consecutive New York State commitment. *See* Dkt. No. 13 at ¶ 20. The detainer was honored by the Bureau of Prisons, and Plaintiff remained in their custody until March 28, 2013. *See id.* at ¶ 21. On that date, Plaintiff was transferred to DOCCS' custody where he remained until July 19, 2013. *See id.* at ¶¶ 22-23. After Plaintiff filed a request to be re-sentenced, the original sentencing state court ordered Plaintiff's release at the re-sentencing hearing on July 18, 2013. *See id.* at ¶ 23; Dkt. No. 27-2 at 23-24.

Plaintiff alleges that Defendant violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments together with state law tort claims.[2] *See* Dkt. No. 13. Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Dkt. No. 27. Defendant argues that Plaintiff's constitutional claims are insufficient, that Plaintiff failed to allege personal involvement of Defendant, and that Defendant is entitled to qualified immunity. *See id.* Defendant also argues that Plaintiff's state law claims are barred by New York Corrections Law § 24 and that Plaintiff's civil rights claims against Defendant in her official capacity are barred by the Eleventh Amendment. *See id.* For the reasons set forth, the Court dismisses Plaintiff's state law claims as well as the constitutional claims brought against Defendant in her official capacity. With regard to Plaintiff's constitutional claims against Defendant in her individual capacity, the Court denies Defendant's motion to dismiss because Plaintiff has stated a claim for relief that is plausible on its face and Defendant failed to established her entitlement to qualified immunity.

---

[2] Plaintiff alleges violations of his rights under the "Fourth, Fifth, and Fourteenth Amendments," *see* Dkt. No. 13 at ¶ 29, but Plaintiff clarifies in the complaint that he is alleging violations of the Eighth Amendment, not the Fifth Amendment. *See* Dkt. No. 13 at ¶¶ 39-42.

## III. DISCUSSION

**A.     Standard of Review**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  "[T]he Supreme Court rejected the 'oft quoted' standard . . . that a complaint should not be dismissed, 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief,'" *Li Xi v. Apple, Inc.*, 603 F. Supp. 2d 464, 467 (E.D.N.Y. 2009) (citing *Twombly*, 550 U.S. at 570 and quoting *Conley*, 355 U.S. at 45-46) and, instead, held that a plaintiff must "plead enough facts 'to state a claim to relief that is plausible on its face.'" *Id.* at 467 (quoting *Twombly*, 550 U.S. at 555).  Although detailed factual allegations are not required in a pleading, a plaintiff must provide the grounds for their entitlement to relief.  *See Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

When considering whether a complaint has facial plausibility, that is to say that a plaintiff has "nudged their claims across the line from conceivable to plausible," a court must accept as true all well-pleaded facts in the complaint.  *Twombly*, 550 U.S. at 570; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The Court should not credit "mere conclusory statements" or

"threadbare recitals of the elements of a cause of action" as well-pleaded facts because they "do not suffice." *Id.* at 678-79; *see also Twombly*, 550 U.S. at 555.  However, this standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002) (holding that a complaint does not need to contain specific facts establishing a prima facie case).  "[T]he Court must also determine whether [the creditable facts] plausibly suggest an entitlement to relief." *Coal. for a Level Playing Field, LLC v. AutoZone, Inc.*, 737 F. Supp. 2d 194, 215 (S.D.N.Y. 2010); *see also Pearson Capital Partners LLC v. James River Ins. Co.*, ___ F. Supp. 3d ___, No. 14-cv-4664, 2015 WL 9450632, *3 (S.D.N.Y. Aug. 28, 2015) (holding that a court's dismissal is not appropriate if the factual allegations rise above the level of speculation).

## B.     Materials Outside the Pleadings

In support of her motion to dismiss, Defendant submitted a declaration from Richard de Simone, the deputy counsel in charge of the Office of Sentencing Review.  *See* Dkt. No. 27-2. This declaration provides DOCCS interpretation of the relevant state law and a Bureau of Prisons program statement as its applied to Plaintiff's criminal sentences, DOCCS' obligations and designations of primary jurisdiction determinations, and DOCCS' calculation of Plaintiff's sentence.[3]  *See id.* at 1-8.  Mr. de Simone opines that Plaintiff was always properly in DOCCS' custody based upon his facts in the declaration.  *See id.*  In addition, Mr. de Simone's declaration was submitted with exhibits, which included a uniform sentence and commitment form dated September 8, 2006, the judgment from the sentencing district court, Plaintiff's

---

[3] Defendant does not acknowledge or justify the submission of material outside of the complaint for the Court's consideration on her motion to dismiss pursuant to Rule 12(b)(6), but, as referenced, Defendant repeatedly relies on the facts found within the extraneous material.

reception/classification system legal date computation sheet represented to be from DOCCS, uniform sentence and commitment form dated July 18, 2013, and the transcript from Plaintiff's re-sentencing hearing on July 18, 2013. *See id.* at 9-41. A complaint is deemed to include any documents attached to it as an exhibit or any statements or documents incorporated in it by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). Accordingly, some of the material submitted by Defendant is outside the pleading, and the Court has several options in proceeding.

"[T]he court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *see also* FED. R. CIV. P. 12(d); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (stating that it is error when a district court considers affidavits and exhibits submitted by the defendants) (citing *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991)). Even if a document is not incorporated by reference to a complaint, the Court can still consider it if the Court determines that the document is integral to the complaint. *See id.* If a plaintiff has actual notice of all the information in the document *and* has relied on the document when framing the complaint, then the documents can be considered on a Rule 12(b)(6) motion without conversion. *See id.* (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). However, the Second Circuit has stressed that the plaintiff must have relied "on the terms and effect of a document in drafting the complaint" and mere notice or possession of the material is not enough. *See id.* Finally, materials that are subject to judicial notice can also be excepted from the conversion requirement and considered by the Court

on a Rule 12(b)(6) motion with limitations.  *See Glob. Network Commc'ns, Inc., v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  The Court may also take judicial notice to establish the existence of a public record, for example, but it cannot consider the document for the truth of the matters contained within.  *See id.*

Here, the Court declines to convert Defendant's motion pursuant to Rule 12(b)(6) to a Rule 56 motion.  Initially, it is noted that there are no exhibits to the complaint.  Upon reading the complaint, the Court finds that the pleading incorporates by reference the Uniform Sentence & Commitment dated September 8, 2006 at paragraphs fourteen through sixteen, the Judgment in a Criminal Case dated November 27, 2006 at paragraphs seventeen through eighteen, the Uniform Sentence & Commitment dated July 18, 2013 at paragraph twenty-three, and the re-sentencing hearing transcript at paragraph twenty-three.  *See* Dkt. No. 13.  The Court excludes from its consideration the affidavit of Mr. de Simone as it is extraneous material to the complaint containing factual information, DOCCS' interpretations, and opinions.  With regard to the remaining exhibits to Mr. de Simone's affidavit, the Court analyzes the documents submitted to determine if they were integral to the complaint or whether judicial notice could be taken.

The Program Statement issued by the Bureau of Prisons is subject to judicial notice as an official communication disclosing policy and, thus, reliable.  *See Gleave v. Graham*, 954 F. Supp. 599, 605 (W.D.N.Y. 1997) (citing *United States v. Penn Foundry & Mfg. Co., Inc.*, 337 U.S. 198, 215 (1949)).  The Court will consider this document to the extent permissible, as described.  The document entitled "Reception/Classification System Legal Date Computation" does not have identifying information that suggests to this Court that it is a public record, and, therefore, it is not subject to judicial notice.  This document is not incorporated by reference in the complaint and it is not integral to the complaint, as described by the Second Circuit, because there is no reason to

believe that Plaintiff had actual notice of this document or relied upon it in framing his complaint.

Accordingly, the Court does not consider this document on the present motion.

**C.     New York Correction Law § 24**

Plaintiff asserts claims for assault and battery, false imprisonment, intentional infliction of emotional distress, and negligence under New York common law against Defendant.  *See* Dkt. No. 13 at ¶¶ 46-62.  Defendant argues that all of Plaintiff's state law claims against her in her individual or personal capacities are barred pursuant to New York Correction Law § 24.  *See* Dkt. No. 27-1 at 10-11.

In pertinent part, the New York statute provides that:

> 1. No civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correction Law § 24.  It is well settled that when this Court exercises pendent jurisdiction over a state cause of action, it must apply the substantive state law.  *See Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (citations omitted) (explaining that the plaintiff's state law claims must be dismissed because "a federal court acts essentially as a state court in addressing pendent state law claims"); *Parris v. New York State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013); *Joy v. New York*, No. 5:09-CV-841, 2010 WL 3909694, *4 (N.D.N.Y. Sept. 30, 2010).

Section 24 of New York Correction Law governs substantive rights; it is not procedural.  *See Baker*, 77 F.3d at 15; *Joy*, 2010 WL 3909694, at *4 (stating New York Correction Law § 24 is

still viable as to state causes of action in federal court despite being found to violate the Supremacy Clause as it relates to Section 1983 claims).

In opposition to Defendant's motion, Plaintiff argues that this statute does not offer immunity protection against the Section 1983 claims. *See* Dkt. No. 29 at 17-18. The Court notes that Defendant did not argue that Plaintiff's Section 1983 claims were barred by N.Y. Correction Law § 24. Plaintiff also argues that New York Correction Law § 24 does not bar claims "against Fiacco in her individual capacity (Claims 5-8)." *See* Dkt. No. 29 at 17-18. To the extent that Plaintiff is arguing that his state law claims are not barred against Defendant because she was acting outside the scope of her employment, the Court finds that there is no merit to this contention. *See* Dkt. No. 29 at 17-18. Plaintiff alleges in the complaint that each and all acts by Defendant were done while acting within the scope and in furtherance of her employment. *See* Dkt. No. 13 at ¶¶ 10-11, 48, 57-58, 62. Accordingly, there are no claims made by Plaintiff in the complaint to support this argument.

Further, an employee's actions are deemed to be within the scope of their employment when "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (citations omitted) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)). For purposes of New York Correction Law § 24, the courts have looked to the following factors to determine whether actions fall within the actor's scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Ierardi*, 119 F.3d at 187 (quoting *Riviello*, 47 N.Y.2d at 303). Therefore, even if the Court were to disregard Plaintiff's specific allegations that all of Defendant's actions were taken within the scope of her employment, which it does not, the conduct, as alleged in the complaint, does not fall outside of the scope of Defendant's employment with DOCCS under this analysis. The Court finds that Plaintiff's pendent state claims are barred by New York Correction Law § 24. Accordingly, the Court dismisses these claims for lack of subject matter jurisdiction.

**D.      Eleventh Amendment**

        Plaintiff brings all claims against Defendant in her individual and official capacity. *See* Dkt. No. 13. The Eleventh Amendment, as interpreted by the Supreme Court, provides that states and their agencies may not be sued by private individuals in federal court for damages or injunctive relief without their consent. *See Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Kozaczek v. New York Higher Educ. Servs. Corp.*, No. 1:10-cv-107, 2011 WL 3687379, *2 (D. Vt. Aug. 23, 2011) (stating that a claim against a state agency is barred by the Eleventh Amendment because the state is the real party at interest). The Eleventh Amendment also bars a damages action against state officials who are sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998). "Official capacity suits 'are, in all respects other than name, suits against a government entity.'" *Sanescu v. Connecticut*, 112 F.3d 505 (2d Cir. 1997) (citing *Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988)). Accordingly, the Court dismisses Plaintiff's claims against Defendant that are brought against her in her official capacity.

**E.      Section 1983 Claims**

In his complaint, Plaintiff brings Section 1983 claims against Defendant for violating his rights under Fourth, Fifth, and Fourteenth Amendments. *See* Dkt. No. 13 at ¶ 29. Plaintiff alleges that Defendant's issuance of "a detainer on the plaintiff, instructing the federal facility to continue to incarcerate him pursuant to a certified consecutive NYS commitment," caused an unlawful extension of his incarceration from September 28, 2012 through July 19, 2013. *See id.* at ¶¶ 20-25. The issuance of the detainer by Defendant was, according to Plaintiff, (1) a violation of the Due Process Clause of the Fourteenth Amendment because the extended period of incarceration was not authorized by any judgment, order, or declaration from any sentencing judge;[4] (2) a violation of the Eighth Amendment's protection against cruel and unusual punishment; and (3) a violation of the Fourth Amendment's protection against false imprisonment. *See id.* at ¶¶ 27-45. Defendant first argues that Plaintiff's constitutional claims are insufficient because Plaintiff has failed to sufficiently state that he was unlawfully detained. *See* Dkt. No. 27-1 at 7-8. It is Defendant's position that Plaintiff's sentence was executed by operation of law and, therefore, Defendant's actions did not violate Plaintiff's constitutional rights. *See id.* at 9. Defendant further argues that Plaintiff has failed to state that she had any personal involvement in Plaintiff's unlawful detainment. *See id.* at 9-10. Although Defendant moves to dismiss all of Plaintiff's constitutional claims, Defendant only sets forth the elements of the false imprisonment claim and does not identify or substantively address Plaintiff's claims for deprivation of due process or cruel and unusual punishment, violations of the Fourteenth and Eighth Amendments, respectively.

---

[4] Plaintiff alleges a violation of her procedural due process rights in the amended complaint. *See* Dkt. No. 13 at ¶¶ 34-38.

Defendant's main contention is that the execution of Plaintiff's period of incarceration, namely running the state sentence consecutive to Plaintiff's federal sentence, occurred by "operation of law." *See* Dkt. No. 27-1 at 8. Defendant relies on Mr. de Simone's opinion that DOCCS was ultimately required to consider Plaintiff's New York State sentence to run consecutive to his federal sentence, despite that the state court ordered the sentence to run concurrently. *See id.* Mr. de Simone states that DOCCS interprets Penal Law §§ 70.25 and 70.30 to require consecutive running even though the state court intended otherwise. *See id.* Therefore, according to Defendant, the detainment of Plaintiff was privileged. *See id.*

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulations, custom, or usage, or any State or Territory.'" *Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (quoting 42 U.S.C. § 1983); *see also Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) ("It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere"). Accordingly, the first part of any analysis for a Section 1983 claim is to identify the constitutional right alleged to have been violated. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Baker v. McCollan*, 443 U.S. 137, 140 (1979). A plaintiff must allege that the defendant acted under the color of "state or territorial law." *Gomez*, 446 U.S. at 640. On this motion, Defendant does not dispute that her actions, as described in the complaint, were carried out under the color of state law. For Section 1983 liability to attach, a plaintiff must allege that the defendant had "direct involvement in the alleged constitutional violation." *Betances v. Fischer*, ___, F. Supp. 3d ___, ___ , No. 11-cv-3200, 2015 WL 4692441, *4 (S.D.N.Y. Aug. 6, 2015), *appeal pending*. Defendant baldly asserts that Plaintiff failed to allege her personal

involvement in the deprivation of Plaintiff's constitutional rights. However, Plaintiff specifically alleges in the complaint that Defendant, with deliberate indifference, issued the detainer that prevented his release from prison and violated his rights. *See* Dkt. No. 13 at ¶¶ 20-22, 29-30, 40-41, 44.

### 1. Fourth Amendment

A Section 1983 claim for false imprisonment, brought under the protections of the Fourth Amendment to be free from unreasonable seizures, is substantially the same claim as the state tort for false imprisonment under New York law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). A Section 1983 claim for false imprisonment is analyzed under the law of the state where the imprisonment occurred. *See Jaegly*, 439 F.3d at 151; *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 233 (E.D.N.Y. 2015). "Under New York law, false arrest is considered to be a species of false imprisonment, and the two claims have identical elements." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000) (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)); *see also Greenaway*, 97 F. Supp. 3d at 233 (noting that a false imprisonment claim is analogous to a false arrest claim).

As correctly laid out by Defendant, "[t]o state a claim for false imprisonment, a plaintiff must allege: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Greenaway*, 97 F. Supp. 3d at 233 (citing *Weyant*, 101 F.3d at 853). In this case, it is alleged that Defendant issued a detainer for Plaintiff, instructing the Bureau of Prisons to continue to incarcerate Plaintiff pursuant to a certified consecutive New York commitment. *See* Dkt. No. 13 at ¶ 20. On this motion, Defendant does not dispute that Plaintiff

was conscious of the confinement or that he did not consent to the confinement. The Court does not agree with Defendant's contention that Plaintiff's confinement was privileged. *See* Dkt. No. 27-1 at 9.

Defendant, relying on the declaration of Mr. de Simone, argues that the consecutive sentences served by Plaintiff occurred by operation of law because Penal Law § 70.30(1) provides that a sentence of imprisonment commences when the prisoner is received into an institution under the jurisdiction of DOCCS.[5] *See* Dkt. No. 27-1 at 8; Dkt. No. 27-2 at 4. According to Defendant, Plaintiff was not received into custody until his transfer in 2013 and so it was impossible for DOCCS to allow him to serve his state sentence concurrent to the federal sentence because the state-imposed sentence did not commence until 2013. *See* Dkt. No. 27-2 at 4-5. Under these circumstances, Defendant asserts that Plaintiff was lawfully detained by DOCCS.

This legal argument put forth by Defendant is not successful on this Rule 12(b)(6) motion because it assumes necessary facts that are not known by the Court from the complaint or any of the documents incorporated into the complaint by reference. This argument rests on the fact that Plaintiff was not in DOCCS' custody from the time he was sentenced in state court on September 8, 2006 until he was release from the custody of the Bureau of Prisons in 2013. The documents submitted by Defendant indicate that Plaintiff was in DOCCS' custody at the time he was sentence on September 8, 2006 until he was committed to the Bureau of Prisons on November 27, 2006. *See* Dkt. No. 27-2 at 12-13. The Uniform Sentence & Commitment dated September 8, 2006 orders that Plaintiff "be and hereby is committed to the custody of the NYSDOCS until released in accordance with the law, and . . . presently in the custody of the NYSDOCS said

---

[5] While the Court does not consider Mr. de Simone's declaration for any facts or for DOCCS' interpretation of any statutes, it considers the legal arguments which are contained within the declaration but absent from Defendant's Memorandum of Law.

defendant shall remain in the custody of the NYSDOCS." Dkt. No. 27-2 at 10. The state sentencing court did not select the other options on the form, which included: (1) Plaintiff was not in DOCCS' custody but was being committed to their custody or (2) Plaintiff is being committed to custody other than DOCCS. *See id.* Whether Defendant has overlooked this order or whether Plaintiff was never in DOCCS' custody until 2013 is a genuine question of material fact that is not properly resolved on this motion to dismiss.

Defendant also argues that Plaintiff's sentences ran consecutively by operation of law pursuant to Penal Law § 70.25. Penal Law § 70.25(1) empowers the sentencing court to determine whether the sentence being impose and a previous, undischarged term of imprisonment shall run either concurrently or consecutively. *See* Dkt. No. 27-2 at 5-6. Defendant argues that the language of this statute also inherently prohibits a sentencing court from directing whether its sentence shall run concurrent or consecutive to an impending future sentence. *See* Dkt. No. 27-2 at 5-6. The cases cited by Defendant stand for the proposition that an earlier sentencing court cannot bind a later sentencing court by promising that the future sentence would be imposed concurrently. *See People v. Roman*, 222 A.D.2d 269, 270 (1st Dept. 1995); *People v. Silva*, 220 A.D.2d 230, 231 (1st Dept. 1995). These cases do not conclude that New York Penal Law § 70.25 prohibits a state sentencing court from directing how its own sentence is to be served in relation to an impending federal sentence, as was the case here. In *People v. Alexander*, 213 A.D.2d 227 (1st Dept. 1995), the appellate court commented that the sentencing judge properly concluded that he was powerless to order the criminal defendant's sentence to run concurrently to "some future sentence which might eventually be imposed" without reference to New York Penal Law § 70.25. *Id.* at 228.

The operation of New York Penal Law § 70.25 in Plaintiff's sentencing depends on the interplay of the federal sentencing and whether DOCCS or Bureau of Prisons had primary custody, which are not factors considered in cases cited by Defendant.[6] Further, some state courts have found that New York Penal Law § 70.25 does not apply when sentences are imposed by courts of other jurisdictions. *See People v. Alba*, 189 Misc. 2d 258, 261-62 (Sup. Ct. Kings Cty. 2001) (citing *People v. ex rel. Winelander v. Denno*, 9 A.D.2d 898, 899 (2nd Dept. 1959)). Even assuming Defendant's argument – that Plaintiff was in legal custody pursuant to state statute – is legally sound, the Court is not able to determine that Plaintiff's sentences were executed by operation of law because material facts are unknown at this stage of litigation, such as the primary custody status of Plaintiff at the times he was arrested, sentenced, and incarcerated by the state and federal courts. *See generally Dutton v. U.S. Attorney Gen.*, 713 F. Supp. 2d 194, 200-03 (W.D.N.Y. 2010) (discussing primary custody of an arrestee determines priority of jurisdiction for trial, sentencing, and incarceration); *Rodriguez v. McMickens*, 133 Misc. 2d 154, 157 (Sup. Ct. N.Y. Cty. 1986) (stating that where the petitioner was first sentenced in state court and subsequently sentence in federal court, it was a violation of New York Criminal Procedure Law § 430.20 to surrender the petitioner to begin his sentence in federal custody).

As stated by the Second Circuit, "[t]he law governing prisoners subject to multiple sentences, particularly prisoners subject to multiple state and federal sentences, is hardly a model of clarity." *McCarthy v. Doe*, 146 F.3d 118, 120 (2d Cir. 1998); *Lugo v. Murray*, No. 03-CV-964F, 2005 WL 857055, *3 (W.D.N.Y. Apr. 13, 2005); *Alba*, 189 Misc. 2d at 260. The Court declines to address these complex issues within the context of Defendant's motion to dismiss when there are material questions of fact outstanding.

---

[6] Defendant does not address the issue of sentences from multiple jurisdictions.

Moreover, the Second Circuit has established that "[t]he only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect." *See Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("The judgment of the court establishes a defendant's sentence, and that sentenced may not be increased by an administrator's amendment"). In *Earley*, DOCS (the predecessor of DOCCS) imposed a term of post-release supervision pursuant to New York Penal Law § 70.45, which required a mandatory term of post-release supervision that applied to Earley. *See id.* at 73. However, the sentencing court in that case did not impose the post-release supervision as part of his sentence. *See id.* The Second Circuit rejected the defendant's argument in *Earley* that the sentence terms are controlled by operation of New York law because it does not change that the "only sentence known to the law is the sentence imposed by the judge." *See Earley v. Murray*, 462 F.3d 147, 149 (2d Cir. 2006). "The fact that New York law mandates a different sentence than the one imposed may render the sentence imposed unlawful, but it does not change it. The sentence imposed remains the sentence to be served unless and until it is lawfully modified." *Id.*; *see also People v. Schiraldi*, 80 Misc. 2d 103, 103-04 (Sup. Ct. N.Y. Cty. 1974) (finding that, although the multi-jurisdiction sentences that were ordered to be served concurrently were contrary to New York Penal Law, the warden did not have the authority to modify the sentence pursuant to the statute because prison officials are conclusively bound by the terms of the commitment papers). The defendant in *Earley*, just as here, argued that there was no alteration by DOCCS because the state statute controlled the sentence, and the Second Circuit, rejecting that argument, explained that "the source of that alteration is immaterial" because only a judge "has the power to constrain a person's liberty." 462 F.3d at 149-50.

The Court finds that Defendant has failed to establish that Plaintiff's detainment was lawful under New York Penal Law and, therefore, privileged. Further, Defendant's motion is silent on any of the law raised by the Second Circuit in *Earley* or, subsequently discussed, in *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013), *Sudler v. City of New York*, 689 F.3d 159 (2d Cir. 2012), and *Sudler v. City of New York*, No. 08 Civ. 11389, 2010 WL 68095, *11 (S.D.N.Y. Jan. 8, 2010). Therefore, Defendant does not address how the law in those cases applies here. Accordingly, the Court finds that Defendant has not established that Plaintiff's complaint fails to state a claim for a violation of his rights under the Fourth Amendment. *See, e.g., Sudler*, 2010 WL 68095, at *11 (denying the defendants' motion to dismiss the false imprisonment claim where it was alleged the plaintiff was entitled to concurrent sentences and was unlawfully incarcerated).

### 2. Eighth Amendment

The rights secured under the Eighth Amendment, to be free from cruel and unusual punishments, can be implicated where a plaintiff is subject to prolonged incarceration beyond his or her sentence. *See Sudler v. City of New York*, 689 F.3d 159, 169 n.11 (2d Cir. 2012); *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (acknowledging that delayed release from incarceration can be the basis of an Eighth Amendment violation but finding that a five-day extension of incarceration does not inflict a sufficiently serious harm to establish that violation); *Brims v. Burdi*, No. 03 Civ. 3159, 2004 WL 1403281, *2 (S.D.N.Y. June 23, 2004). The Eighth Amendment prohibits punishments that "'involve the unnecessary and wanton infliction of pain.'" *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Punishments that are "grossly disproportionate to the severity of the crime" are prohibited by the Eighth Amendment. *Id.* (citing *Coker v. Georgia*, 433 U.S. 584, 583 (1977)). "One class of 'unnecessary and wanton' wrongs . . . is those wrongs

'totally without penological justification.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)) (internal quotation marks and citations omitted). Plaintiff's claim – that his incarceration exceeded his sentence – has been found to belong to this class of wrongs. *See id.* at 1109-10.

Therefore, the standard that the courts have applied to an Eighth Amendment claim for an incarceration exceeding the sentence is the same that was articulated in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), for an Eighth Amendment violation arising out of inadequate medical care, which is the standard of deliberate indifference. *See Sample*, 885 F.2d at 1109 ("Detention for a significant period beyond the term of one's sentence inflicts a harm of a magnitude similar to that involved in *Estelle*"); *Calhoun*, 999 F.2d at 654 (citing *Sample*, 885 F.2d at 1109-10). Therefore, in order for Plaintiff to have sufficiently alleged a violation of his Eighth Amendment rights, he must claim that Defendant acted with deliberate indifference to whether Plaintiff would suffer an unjustified deprivation of his liberty. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Sample*, 885 F.2d at 1110.

There are two components of a Section 1983 claim for violations of the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Chance*, 143 F.3d at 702 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway*, 37 F.3d at 66 (quoting *Wilson*, 501 U.S. at 298); *see also Calhoun*, 999 F.2d at 654 (finding that the alleged deprivation was not "a harm of a magnitude" that violate's the rights secured under the Eighth Amendment). In this case, the objective prong of deliberate indifference is met. "Detention for a significant period beyond" an imposed sentence is a punishment *and* cruel and unusual. *Sample*, 885 F.2d at 1107-1110 (finding an Eighth Amendment violation where there was a nine-month period of incarceration beyond the plaintiff's sentence); *cf. Calhoun*, 999 F.2d at 654 (finding that five days of

incarceration beyond the plaintiff's sentence does not a establish a sufficiently serious harm for Eighth Amendment purposes). Plaintiff alleges to have been unlawfully incarcerated from September 28, 2012 until July 19, 2013, nearly ten months. *See* Dkt. No. 13 at ¶ 25. The Court finds that the complaint alleges a sufficiently serious harm.

The second component of a claim for a violation of the Eighth Amendment is subjective, i.e., "the charged official must act with a sufficiently culpable state of mind." *See Hathaway*, 37 F.3d at 66 (citing *Wilson*, 501 U.S. at 298). A sufficiently culpable state of mind means "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he [or she] must also draw the inference." *Id.* at 66 ("[A] prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety" (internal quotation marks and citations omitted)). In addition to knowing, a plaintiff must also allege that the official "either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight." *Sample*, 885 F.2d at 1110. Deliberate indifference requires more than mere negligence, but it can include culpable recklessness, meaning "'a conscious disregard of a substantial risk of serious harm,'" or choosing "an easier and less efficacious" plan. *Chance*, 143 F.3d at 703 (quoting *Hathaway*, 99 F.3d at 553).

Here, Plaintiff alleges that Defendant issued a detainer for his continued incarceration pursuant to a certified consecutive state commitment. *See* Dkt. No. 13 at ¶ 20. Upon the basis of that detainer, Plaintiff was not released from custody on September 28, 2012, but, instead, he was held in the custody of the Bureau of Prisons until March 28, 2013 when he was transferred to a DOCCS facility. *See id.* at ¶¶ 21-22. Plaintiff specifically alleges that Defendant's deliberate

indifference to his safety, well-being, and constitutional rights caused Plaintiff's alleged unlawful incarceration from September 28, 2012 until July 19, 2013. *See id.* at ¶¶ 40-42. The Court finds that the allegations of the complaint plausibly state a Section 1983 claim for violations of Plaintiff's Eighth Amendment rights.

### 3. Due Process Clause

In order to state a valid Section 1983 claim for violating the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege he or she was deprived of life, liberty, or property without due process of law. *See Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In this case, the Court must determine, first, whether Plaintiff had a protected liberty interest in being released from custody at the end of his term of imprisonment, and, second, "whether the deprivation of that liberty interest occurred without due process of law." *Id.* at 351-52 (citing *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 461-61 (1989)). The courts have held that "an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment." *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993); *see also Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985); *Ford v. Conway*, No. 03-CV-0927, 2009 WL 1924748, *6 (W.D.N.Y. July 1, 2009). Having determined the first prong, the Court next looks to determine "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Sudler v. City of New York*, No. 08 Civ. 11389, 2010 WL 68095, *6 (S.D.N.Y. Jan. 8, 2010).

In this case, Plaintiff does not raise any objections to the due process afforded to him prior to the imposition of his prison sentences, and, thus, the Court presumes that he was properly convicted and sentenced. The alleged deprivation of due process occurred when Defendant, without affording Plaintiff an opportunity to be heard, issued a detainer preventing Plaintiff's state

sentence from being served concurrently with his federal sentence and, in turn, preventing his release upon expiration of his sentence. *See, i.e., Haygood* , 769 F.2d at 1358. Defendant argues that Plaintiff's detainment by DOCCS was pursuant to statute. However, as discussed, the Second Circuit has established that "[t]he only cognizable sentence is the one imposed by the judge." *Earley*, 451 F.3d at 75. "Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect." *Id.* The Second Circuit rejected the argument that the sentence terms are controlled by "operation of New York law" because it does not change that the "only sentence known to the law is the sentence imposed by the judge." *See Earley v. Murray*, 462 F.3d 147, 149 (2d Cir. 2006). "The fact that New York law mandates a different sentence than the one imposed may render the sentence imposed unlawful, but it does not change it. The sentence imposed remains the sentence to be served unless and until it is lawfully modified." *Id.* The defendant in the *Earley* case unsuccessfully argued that there was no alteration by DOCCS because the state statute controlled the plaintiff's sentence, and the Second Circuit explained that "the source of that alteration is immaterial" because only a judge "has the power to constrain a person's liberty." *Id.* at 149-50. In denying the defendant's petition for a rehearing, the Second Circuit made clear that "[w]hatever conceptualization" the defendant had about the function or procedure of New York Penal Law in a sentence, it "cannot operate to undermine protections contained in the Federal Constitution." *Id.* at 150.

To the extent that Defendant asserts this argument to dismiss Plaintiff's claim for violation of the Due Process Clause, Defendant does not offer any basis to justify this Court's departure from the Second Circuit's holding in *Earley*. If Plaintiff's sentence, as imposed by the sentencing judge, was unlawful or impossible to execute, Defendant's recourse was to move to have the Plaintiff's sentence vacated and to have Plaintiff resentenced. *See Earley*, 451 F.3d at 76.

22

Accordingly, the Court finds that Plaintiff has stated a claim for a violation of the Due Process Clause of the Fourteenth Amendment.

### 4. Qualified Immunity

Qualified immunity "'protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known.'" *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). A public official is entitled to qualified immunity where his or her conduct does not implicate a constitutional right or where the conduct at issue does not violate a clearly established constitutional right. *See id.* at 166 (citing *Harlow*, 457 U.S. at 818).

For a constitutional right to be clearly established, its "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and citations omitted). Qualified immunity provides protection "to all but the plainly incompetent or *those who knowingly violate the law*." *Vincent*, 718 F.3d at 166 (internal quotation marks and citations omitted). An official's actions are not protected by qualified immunity by virtue of the fact that his or her action in question has not previously been held unlawful. *See Hope*, 536 U.S. at 739; *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). "[I]f decisions from this or other circuits clearly foreshadow a particular ruling on the issue," the Court may treat the law as clearly established. *Terebesi*, 764 F.3d at 231 (internal quotation marks omitted).

Qualified immunity is an affirmative defense and, as such, Defendant bears the burden of proving that the privilege of qualified immunity applies. *See Vincent*, 718 F.3d at 166; *Coolick v.*

*Hughes*, 699 F.3d 211, 219 (2d Cir. 2012). In Defendant's Memorandum of Law, she briefly outlines qualified immunity in general terms. *See* Dkt. No. 27-1 at 11-12. Then in one paragraph, Defendant concludes, without any support, that Defendant had no constitutional duty to act and that there was no "clearly-established law requiring [Plaintiff] to be released under the circumstances." *See id.* at 12. The Court finds that Defendant's conclusory argument fails to cite to any factual or legal support for her entitlement to qualified immunity against Plaintiff's Section 1983 claims and, therefore, failed to meet her burden of establishing an entitlement to qualified immunity.

The Court further finds that the necessary and relevant facts that Defendant would need to rely upon, if an appropriate qualified immunity argument had been raised, are not contained in the complaint. As an affirmative defense, qualified immunity is normally asserted in the answer. *See McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citing *Harlow*, 457 U.S. at 815). However, qualified immunity may be asserted in a Rule 12(b)(6) motion "so long as the defense is based on facts appearing on the face of the complaint." *Id.* at 435-36 (citing *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983) ("Usually, the defense of qualified immunity cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion") and *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)). "Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *Id.* at 436 (internal citations omitted) (citing *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)). "On a motion to dismiss, 'it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness.'" *McGarry v. Pallito*, 687 F.3d 505, 514 (2d Cir. 2012) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

As already addressed, the Court finds that Plaintiff's complaint sufficiently states Section 1983 claims for violations of Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments. The law at issue in this case was set out by the Second Circuit in the *Earley* decisions, that the "only cognizable sentence is the one imposed by the judge" and "[a]ny alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect." *Earley*, 451 F.3d at 75 (citing *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936)); *see also Vincent*, 718 F.3d at 169 (stating that *Earley* (451 F.3d at 76) clearly established that DOCCS has no power to alter a sentence); *Early*, 462 F.3d 147 (2d Cir. 2006). The *Earley* decisions were decided in the Summer of 2006. For those cases that involve the imposition of post-release supervision by DOCCS' employees (the official's conduct at issue in that case), the inquiry of whether the law was clearly established in 2006 has been resolved in the affirmative. Under the circumstances where the law has been clearly established, qualified immunity may sometimes still be available, if a case presents with a fact pattern that differs from the case where the constitutional principle was announced *and* subsequent cases have differed as to the reach of that holding. *See Vincent*, 718 F.3d at 170. Since this action presents with a different fact pattern than was present in *Earley* and subsequent cases have differed as to the reach of that holding, *see generally Sudler v. City of New York*, 689 F.3d 159 (2d Cir. 2012), qualified immunity may still be available to Defendant. However, based on the facts in Plaintiff's complaint, the Court is not able to determine whether there was clearly established law prohibiting Defendant's actions.

Plaintiff was sentenced by the state court on September 8, 2006 and by the federal court on November 27, 2006, and Plaintiff was released from DOCCS custody on September 26, 2013.

The date the detainer was issued is not contained within the complaint.[7]  The Court finds that in order for Defendant to have successfully shown her entitlement to qualified immunity, the date of her actions – the issuance of the detainer – must be known in order to evaluate whether the law was clearly established at that time.  Defendant's contention that she is entitled to qualified immunity may properly be considered after discovery of the necessary facts has been conducted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and, for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 27) is **GRANTED in part** and **DENIED in part**, as follows:

1.     The motion is **GRANTED** with respect to Plaintiff's state law claims for assault and battery, false imprisonment, intentional infliction of emotional distress, and negligence;

2.     The motion is **GRANTED** with respect to Plaintiff's claims against Defendant in her official capacity;

3.     The motion is **DENIED** in all other respects; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 20, 2016
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[7] Mr. de Simone states in his declaration that the detainer was issued on May 4, 2007.  *See* Dkt. No. 27-2 at ¶ 10.  However, the detainer was not submitted to this Court and facts contained within the declaration are not properly considered on this motion.