**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRYAN FRANCIS,**

                                        **Plaintiff,**

            **vs.**                                          **9:15-CV-901**
                                                        **(MAD/ATB)**

**KIMBERLY FIACCO,** *also known as Kimberly*
*Davidson***; RICHARD DESIMONE; DIANE**
**HOLFORD; and KRISTINA LENNON,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**TABNER, RYAN & KENIRY, LLP**          **WILLIAM RYAN, JR., ESQ.**
18 Corporate Woods Boulevard           **BRIAN M. QUINN, ESQ.**
Albany, New York 12211-2605
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**              **LOUIS JIM, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff commenced this action on January 13, 2014, alleging violations of the Fourth,

Eighth, and Fourteen Amendment, arising from the lodging of a New York State detainer in May

of 2007 while Plaintiff was being held in federal custody and the eventual refusal to lift the

detainer in July 2010.  *See* Dkt. No. 1.

        Currently before the Court is Defendants' motion for summary judgment.  *See* Dkt. No.

62.

## II. BACKGROUND

On September 8, 2006, the Honorable Penny M. Wolfgang, Justice of the New York State Supreme Court, Erie County, sentenced Plaintiff to a term of incarceration of one and one-half to three years for the crime of Attempted Criminal Possession of Marihuana in the Second Degree. *See* Dkt. No. 65-1 at ¶ 1.  At the time of sentencing through November 2006, Plaintiff was in the custody of the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").[1]  *See id.* at ¶ 2.  On November 20, 2006, the Honorable William M. Skretny, United States District Judge, Western District of New York, sentenced Plaintiff to a term of 120 months of imprisonment and a 5-year period of supervised release for the crime of Possession of a Firearm in Furtherance of a Drug Trafficking Crime.  *See id.* at ¶ 3.  The federal court then remanded Plaintiff to the custody of the United States Marshal for delivery to the Federal Bureau of Prisons.  *See id.* at ¶ 4.

Defendant Davidson sent a letter, dated May 4, 2007, to Federal Correctional Institution ("FCI") McKean stating, among other things, that "[e]nclosed is a certified copy of the consecutive New York State commitment of subject.  Please lodge it as a detainer."  *Id.* at ¶ 5.  Records from DOCCS appear to contain a handwritten note from Defendant Davidson, dated May 4, 2007, showing that Defendants Davidson and Holford discussed Plaintiff's sentence on that date.  *See id.* at ¶ 6.  At some point around May 2007, a counselor at FCI McKean showed Plaintiff the detainer.  *See id.* at ¶ 7.

On or about July 9, 2009, Plaintiff received a letter from Oliver C. Young, an attorney with the New York State Supreme Court, stating as follows:

---

[1] The Court notes that in 2011, the New York State Department of Correctional Services and the New York Statement Division of Parole merged to form the New York State Department of Corrections and Community Supervision.

2

> Your recent letter to the Honorable Penny M. Wolfgang concerning [*People v. Francis*] was forwarded to this office for response. You are inquiring about a detainer that may have been served upon you.
>
> From a review of your Sentence & Commitment order, it appears that the court directed that your state sentence was to run concurrent with your federal sentence. If you believe that the detainer was erroneously served and you are placed in the custody of the New York State authorities upon your release from the federal institution, you will have the opportunity to challenge your detention in the appropriate court at that time. The court is not able to assist you presently in the absence of a formal motion or petition seeking specific relief.

Dkt. No. 65-1 at ¶ 8.

Thereafter, in a letter dated June 22, 2010, Plaintiff asked Defendant Davidson to lift the detainer. *See id.* at ¶ 9. On July 1, 2010, Defendant Lennon responded to Plaintiff's letter as follows: "The Penal Law does not allow a sentence to run concurrently with a term of imprisonment that has not yet been imposed. Your state sentence will not commence until you are received by the New York State Department of Correctional Services; please see Penal Law § 70.30(1)." *Id.* at ¶ 10. Plaintiff acknowledges that he received this July 1, 2010 letter. *See id.* at ¶ 11. Although Plaintiff's June 22, 2010 letter was addressed to Defendant Davidson, Defendant Lennon was the one who responded because "interstate" cases were Defendant Lennon's responsibility at that time. *See id.* at ¶ 14.

On August 16, 2012, Plaintiff moved to set aside his New York State sentence under New York Criminal Procedure Law § 440.20. *See* Dkt. No. 65-1 at ¶ 15. On January 9, 2013, Judge Wolfgang denied the motion, stating that "the relief the defendant is seeking is not available pursuant to CPL § 440.20. His remedy is to seek relief against DOCCS pursuant to Article 70 or Article 78 of the Civil Practice Law and Rules if is he is returned to the state on the detainer and

is not immediately released." *Id.* at ¶ 16.  On May 28, 2013, Mr. Young, a state court attorney,

advised Plaintiff as follows:

> [I]f you believe that the correctional facility has miscalculated your
> sentence and you are being held illegally, you may wish to
> commence an action pursuant to [CPLR Articles 70 or 78]
> challenging your detention.  File your petition with the office of the
> chief clerk of the county where you are being held.

*Id.* at ¶ 17.  Mr. Young also provided Plaintiff with the address to the Chief Clerk of Wyoming

County because Plaintiff was being held in the Wyoming County Correctional Facility.  *See id.* at

¶ 18.  Although Plaintiff claims that he filed an Article 78 petition, a review of the New York

State Uniformed Court System's eCourts WebCivil Supreme Court Case Search fails to reveal any

Article 78 petitions in which Plaintiff was the petitioner.  *See id.* at ¶ 19.[2]

  Plaintiff contends that he should have been released from federal custody on September

28, 2012, but that he remained in federal custody due to the detainer.  *See id.* at ¶ 20.  Documents

from the United States Department of Justice ("DOJ") show that the Federal Bureau of Prisons

("BOP") released Plaintiff into New York State's custody on March 28, 2013.  *See id.* at ¶ 21.

The BOP's Release Authorization identified the Erie County Sheriff's Department as the agency

that was taking Plaintiff into custody.  *See id.* at ¶ 22.  On April 15, 2013, Plaintiff was returned

to a DOCCS-managed facility.  *See id.* at ¶ 24.  Upon Plaintiff entry into DOCCS' custody, his

maximum expiration date was calculated to be November 26, 2015, and his conditional release

date was calculated to be November 26, 2014.  *See id.* at ¶ 25.

  On July 18, 2013, with respect to the original New York State indictment, and upon the

consent of Claudia S. Schultz, Esq., who served as Plaintiff's counsel at the time, and the Erie

---

[2] Although Plaintiff generally agrees with this statement, he argues that "one would need
to actually review the actual records from the clerk's office or have the clerk conduct a search for
the records prior to obtaining any inference that no such records exist."  Dkt. No. 65-1 at ¶ 19.

County District Attorney's Office, Judge Wolfgang "imposed" a "sentence nunc pro tunc to November 29, 2006." Dkt. No. 65-1 at ¶ 27; Dkt. No. 62-7 at 119-124. During this proceeding, Judge Wolfgang stated, among other things, as follows: "On September 8th, 2006, the Court sentenced you to a term of one and one half to three years to run concurrently with a federal sentence you were about to receive. However, by operation of law, you did not receive the credit the Court intended." Dkt. No. 65-1 at ¶ 29; Dkt. No. 62-7 at 123. As a result of this proceeding, Plaintiff was released from DOCCS' custody on July 23, 2013. *See* Dkt. No. 65-1 at ¶ 35.

Plaintiff commenced this action on January 13, 2014, alleging a Fourth Amendment false arrest claim, an Eighth Amendment deliberate indifference claim, and a Fourteenth Amendment procedural due process claim. *See* Dkt. No. 1. Plaintiff amended his complaint on February 10, 2017, to assert his claims against individuals who were previously unidentified. *See* Dkt. No. 46.

In their motion for summary judgment, Defendant first argue that because Plaintiff learned of the detainer in May 2007 and that Defendants would not lift the detainer in July 2010, all claims associated with the lodging of the detainer and the refusal to lift it are untimely. *See* Dkt. No. 62-16 at 9. Further, Defendants contend that, even assuming the claims are timely, the undisputed material facts establish that Defendants did not violate Plaintiff's rights. *See id.* at 9-10. Finally, Defendants argue that even if the Court finds that Plaintiff's constitutional rights were violated, they are entitled to qualified immunity because it was not and is not clearly established that commencing Plaintiff's state sentence upon his entry into DOCCS' custody violated his rights. *See id.* at 10.

### III. DISCUSSION

**A.    Summary Judgment Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      Statute of Limitations**

*1. Lodging of the Detainer*

In their motion, Defendants contend that Plaintiff learned of the detainer in May of 2007 and, therefore, all claims associated with the lodging of the detainer expired by the end of May 2010. *See* Dkt. No. 62-16 at 16. The Court disagrees.

Although Section 1983 contains no explicit statute of limitations, New York law is "borrow[ed]," and applies a three year limitation on such claims. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citation omitted); N.Y. C.P.L.R. § 214(5); *see also Romer v. Leary*, 425 F.2d 186, 187 (2d Cir. 1970); *Lugo v. Senkowski*, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000). While state law determines the length of the statute of limitations, federal law governs the accrual date for these claims. *See Pearl*, 292 F.3d at 80 (citation omitted). Accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*; *see also Ayuso-Figueroa v. Rivera-Gonzalez*, 456 F. Supp. 2d 309, 320 (D.P.R. 2005) (citing *Muniz-Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir. 1994)). "The doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Ayuso-Figueroa*, 456 F. Supp. 2d at 320 (citing *Alldread v. City of Grenada*, 988 F.2d 1425, 1432 (5th Cir. 1993)).

Defendants rely on *Beto v. Barkley*, No. 14-cv-2522, 2016 WL 465030 (E.D. Pa. Feb. 8, 2016), in support of their argument that Plaintiff's claims are untimely. *See* Dkt. No. 66 at 6-7. In *Beto*, another excessive confinement case based on the lodging of a state detainer, the plaintiff argued that his action was timely commenced in 2014 because he "was not harmed until he was kept over his maximum sentence date in 2013 and until he was kept in federal custody and not released to a halfway house in 2012 because of [a] contested illegal state detainer at issue." *Beto*, 2016 WL 465030, at *5. When the plaintiff was arrested for a federal crime in 1998, he was already on state parole. *See id.* at *1-*2. He posted bail on the date of his federal arrest but, when he reported to his parole officer the following day, he was placed under arrest for violating the terms of his parole. *See id.* at *2. The plaintiff remained in state custody from March 1998 through October 1998, when he was transferred into federal custody to serve his seventeen year

sentence received from the federal court. *See id.* The plaintiff alleged that he was transferred to a

high security federal facility in November of 1998 because of the state detainer placed on him.

*See id.* When the plaintiff was released from the federal facility on March 1, 2013, he was

transported back to a state facility in Pennsylvania because of the state detainer. *See id.* In 1998

and 2000, the plaintiff, through his wife, contacted state officials to inform them that the detainer

was illegal because, despite being in state custody for over six months while his federal charges

were pending, the plaintiff was not given a parole hearing within fourteen days of his revocation.

*See id.* at *3. Further, the plaintiff argued that his detention by the state from March 1, 2013

through July 2013 was illegal because his maximum expiration date for his time on parole had

long since expired. *See id.*

In dismissing the claims against the defendants pertaining to actions taken in 1998 and

2000, the court held that they were untimely since those claims "relate only to . . . isolated acts

which occurred more than a decade before [the plaintiff] filed this action and there is no basis for

finding that their alleged actions give rise to a continuing violation or that the discovery rule

should toll the statute of limitations[.]" *Id.* at *6 (footnotes omitted). In reaching this conclusion,

the court held that a "'cause of action accrues even though the full extent of the injury is not then

known or predictable.... Were it otherwise, the statute would begin to run only after a plaintiff

became satisfied that he had been harmed enough, placing the supposed statute of repose in the

sole hands of the party seeking relief.'" *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

Although the Third Circuit recently affirmed the district court's dismissal, it did so on the

merits, refusing to find that the claims were untimely. In fact, the Third Circuit assumed that the

procedural due process claims were timely, indicating that it likely accrued when the parole board

invoked the plaintiff's detainer. *See Beto v. Barkley*, 706 Fed. Appx. 761, 766 n.10 (3d Cir. 2017)

(quoting *Moody v. Daggett*, 429 U.S. 78, 87, 97 S. Ct. 274, 50 L. Ed.2d 236 (1976) ("[E]xecution of the [parole violator] warrant and custody under that warrant [are] the operative event triggering any loss of liberty attendant upon parole revocation"))).

The Court agrees with the assumption made by the Third Circuit that Plaintiff's claims did not accrue until action was taken on the state detainer.  Plaintiff was not taken into custody by the state and was not deprived of any liberty interest until he completed his federal sentence, but remained in custody because of the detainer.  At this point, Plaintiff's claims accrued.  *See Herny v. Kansas*, No. 13-cv-3118, 2013 WL 4431264, *2 (D. Kan. Aug. 16, 2013) (citation omitted); *Barth v. Warden, FCI Fort Dix*, No. 09-cv-3519, 2009 WL 3634656, *3 (D.N.J. Aug. 25, 2009) (holding that, "until the warrant [based on a detainer] was executed, [the petitioner] had . . . lost no liberty interest due to the outstanding parole violator warrant") (citations omitted).

In *Ayuso-Figueroa*, the plaintiff was sentenced on July 19, 1989, to twenty-years in prison.  *See id.* at 312.  During her incarceration, through the receipt of credits and reductions for good time, the plaintiff's sentence should have ended by March 1999.  *See id.*  However, upon being transferred to a different facility in 1996, the plaintiff's sentence was recalculated and she was denied the credits and reductions she had previously received.  *See id.*  After various procedural hurdles, on April 24, 2001, the plaintiff was summarily released, when her previous credits and reductions were reinstated.  *See id.*  Upon her release, the plaintiff filed suit under Section 1983 claiming that the temporary denial of her time credits and reductions violated her rights under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.  *See id.*

The defendants moved for summary judgment on several grounds, including that the plaintiff's claims were time barred.  *See id.* at 318.  The defendants argued that the plaintiff first learned in 1996 that she was being denied the credits and reductions she had previously received

and, although the claim was tolled through June 5, 1998, while she unsuccessfully challenged the decision administratively and in court, it is nevertheless untimely under Puerto Rico's one-year statute of limitations because the complaint was not filed until April 19, 2002. *See id.* at 320. The plaintiff, however, argued that the actual accrual date was April 24, 2001, the date she was finally released from prison. *See id.* Agreeing with the plaintiff, the court held that *Heck v. Humphrey*, 512 U.S. 477 (1994), demands this result because any action brought under Section 1983 prior to her release from prison would have necessarily called into question the validity of her sentence. *See id.* As such, the court held that the cause of action did not accrue until her sentence had been invalidated. *See id.* at 321 (citing *Heck*, 512 U.S. at 489-90; *Guzman-Rivera v. Rivera-Cruz*, 29 F.3d 3, 5 (1st Cir. 1994)).

In the present matter, Plaintiff was in federal custody and serving a lawful federal sentence when Defendants issued the detainer. Therefore, the detainer did not adversely impact Plaintiff's liberty when it was issued. In fact, Plaintiff did not suffer any damages based on the detainer until September 2012, when the detainer prevented Plaintiff from leaving the federal facility for a residential reentry facility (halfway house). Additionally, in March 2013, while still in federal custody because of the detainer, Plaintiff was transferred to state custody. It was not until July 18, 2013, that Judge Wolfgang resentenced Plaintiff, which allowed for Plaintiff's release on July 23, 2013. *See* Dkt. No. 65-1 at ¶ 35. As such, the Court finds that Plaintiff's claims accrued in July of 2013 and his complaint filed on January 13, 2014 is timely. *See Guzman-Rivera*, 29 F.3d at 5.

Additionally, the Court notes that the claims against Defendants DeSimone, Holford, and Lennon, named as John Doe Defendants in the original complaint, were finally identified in the second amended complaint. These claims relate back to the original pleading under Rule

15(c)(1)(A) of the Federal Rules of Civil Procedure and Section 1024 of the New York Civil Practice Law and Rules because Plaintiff exercised due diligence prior to the running of the statute of limitations and described the John Doe Defendants in such a way that they were fairly apprised that they were the intended parties. *See Hogan v. Fischer*, 738 F.3d 509, 518-20 (2d Cir. 2013).

Accordingly, the Court denies Defendants' motion for summary judgment on this ground.

**C.    Due Process**

In their motion, Defendants first argue that Plaintiff's false imprisonment claim should be analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Fourth Amendment, because a Section 1983 claim for false imprisonment "'is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law." Dkt. No. 62-16 at 18 n.8 (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1970))). Defendants contend that Plaintiff's due process claim must be dismissed because Plaintiff could have sought relief under Articles 70 or 78 of the CPLR, which satisfy the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976), where the alleged deprivations of liberty occurred pursuant to established procedures. *See id.* at 18-20. In response, Plaintiff makes arguments as to why his Fourth Amendment rights were violated, but does not address Defendants assertion that the Fourth Amendment is inapplicable to the present matter. *See* Dkt. No. 65 at 16-21.

The Court agrees with Defendants that Plaintiff's due process claim arises under the Fourteenth Amendment, not the Fourth. Plaintiff asserts injuries arising from his unlawfully prolonged detention following his lawful convictions. Having been convicted, Plaintiff's claims regarding unlawfully extending the term of his incarceration must necessarily arise from either

the Eighth Amendment's prohibition of cruel and unusual punishment or the Fourteenth Amendment Due Process Clause. *See Schultz v. Egan*, 103 Fed. Appx. 437, 440 (2d Cir. 2004); *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004); *Beil v. Lake Erie Corr. Records Dept.*, 282 Fed. Appx. 363, 368 (6th Cir. 2008). The Court is unaware of any decisional law applying the Fourth Amendment in any context similar to the present matter. *See Beckstrand v. Read*, 563 Fed. Appx. 533, 534 (9th Cir. 2014) (finding that the case law does not support the plaintiff's contention that a claim for post-conviction overdetention can be brought under the Fourth Amendment). As such, Plaintiff's Fourth Amendment claim is dismissed.[3]

### 2. Fourteenth Amendment

In order to state a valid Section 1983 claim for violating the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege he or she was deprived of life, liberty, or property without due process of law. *See Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In this case, the Court must determine, first, whether Plaintiff had a protected liberty interest in being released from custody at the end of his term of imprisonment, and, second, "whether the deprivation of that liberty interest occurred without due process of law." *Id.* at 351-52 (citing *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 461-61 (1989)). The courts have held that "an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment." *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993); *see also Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985); *Ford v. Conway*, No. 03-CV-0927, 2009 WL 1924748, *6 (W.D.N.Y. July 1, 2009).

---

[3] Although it is dismissing Plaintiff's Fourth Amendment claim, the Court notes that many of the arguments raised in support of his Fourth Amendment claim are applicable to his Fourteenth Amendment claim. *See* Dkt. No. 65 at 16-21. As such, to the extent the arguments are relevant to Plaintiff's remaining claims, they will be considered by the Court.

Defendants do not contend that Plaintiff did not have a protected liberty interest in being released upon the expiration of his maximum term of imprisonment, nor could they.  Having determined the first prong, the Court next looks to determine whether the procedures attendant upon that deprivation were constitutionally sufficient.  *See Sudler v. City of New York*, No. 08 Civ. 11389, 2010 WL 68095, *6 (S.D.N.Y. Jan. 8, 2010), *aff'd* 689 F.3d 159 (2d Cir. 2012).

The Second Circuit distinguishes between due process claims "based on establish state procedures and ... claims based on random, unauthorized acts by state employees." *Schultz v. Egan*, 103 Fed. Appx. 437, 440 (2d Cir. 2004) (citing *Hudson v. Palmer*, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)) (other citations omitted).  "Where a claim is based on such 'random, unauthorized acts,' a prisoner's due process rights are not violated 'so long as the government provides a meaningful remedy subsequent to deprivation.'"  *Moore v. Newton*, 220 F. Supp. 3d 275, 295 (E.D.N.Y. 2016) (quoting *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001)). "The rationale for this principle is plain: because the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation."  *Id.* (quoting *Schultz*, 103 Fed. Appx. at 441)); *see also Hudson*, 468 U.S. at 534 (holding that only a post-deprivation remedy was required following the intentional destruction of an inmate's personal property by a prison guard because the state was "not in a position to provide for predeprivation process").

The "random and unauthorized" exception to the requirement of a pre-deprivation hearing does not apply, however, where the government actor in question is "a high-ranking official with 'final authority over significant matters.'"  *DiBlasio v. Novello*, 344 F.3d 292, 302-03 (2d Cir. 2003) (quoting *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983)).  The Second

Circuit has explained that this is because "the state acts through its high-level officials." *Burtnieks*, 716 F.2d at 988.  Additionally, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post[-]deprivation procedures will not, ipso facto, satisfy due process."  *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson*, 468 U.S. at 532, 104 S. Ct. 3194; *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982)).  In this situation, courts must looks to several factors to determine whether due process has been satisfied: "1) 'the private interest ... affected by the official action'; 2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and 3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'"  *Sudler v. City of New York*, 689 F.3d 159, 175 n.21 (2d Cir. 2012) (quoting *Mathews*, 424 U.S. at 335, 96 S. Ct. 893).

Defendants acknowledge that the alleged depravation occurred pursuant to established DOCCS procedures and, therefore, the availability of a post-deprivation procedure does not, by itself, satisfy due process.  *See* Dkt. No. 62-16 at 19.  As such, the Court must look to the factors outlined in *Mathews* to determine whether due process was satisfied.

First, the courts have long recognized that the interest in being free from physical detention and bodily restraint are at the core of the interests protected by the Due Process Clause. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Parham v. J.R.*, 442 U.S. 584, 600 (1979).  As such, the private interest affected by the official action weighs heavily in Plaintiff's favor.

Second, the court must consider the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Again, this factor weighs in Plaintiff's favor. It is beyond question that DOCCS, as jailers, must abide by the term of imprisonment imposed by the sentencing judge. "The only sentence known to the law is the sentence or judgment entered upon the records of the court." *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 465 (1936). "The prisoner is detained ... on account of the judgment and sentence" "not by virtue of the warrant of commitment" or any other document. *Id.* (quoting *Biddle v. Shirley*, 16 F.2d 566, 567 (8th Cir. 1926)) (internal quotation marks omitted). "If the judgment and sentence do not authorize ... detention, no 'mittimus' will avail to make detention lawful." *Id.*; *see also United States v. Marques*, 506 F.2d 620, 622 (2d Cir. 1974) ("It is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence. The written commitment is 'mere evidence of such authority'") (quoting *Sobell v. United States*, 407 F.2d 180, 184 (2d Cir. 1969)). Based on this authority, courts have held that a jailor's authority to confine a prisoner begins and ends with the sentence pronounced by the sentencing judge. *See Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006).

Here, the state court judge ordered Plaintiff's state sentence to run concurrent to his yet-to-be imposed federal sentence. Regardless of the propriety of that action, DOCCS, through Defendants, were required to run the two sentences concurrently, which they failed to do. While it may be true that Plaintiff could have challenged the propriety of the detainer through Article 70 or 78 of the CPLR or through a state habeas proceeding, that is not dispositive of the issue.

As discussed in more detail above, on July 19, 2009, Plaintiff received a letter from a state court attorney addressing Plaintiff's inquiry regarding why the detainer was placed on him.

15

Plaintiff was instructed as follows: "if you believe that the detainer was erroneously served and you are placed in the custody of the New York State authorities upon your release from the federal institution, you will have the opportunity to challenge your detention in the appropriate court at that time."  Dkt. No. 65-1 at ¶ 8.  Thereafter, in a letter dated June 22, 2010, Plaintiff asked Defendant Davidson to lift the detainer.  *See id.* at ¶ 9.  On July 1, 2010, Defendant Lennon responded to Plaintiff's letter as follows: "The Penal Law does not allow a sentence to run concurrently with a term of imprisonment that has not yet been imposed.  Your state sentence will not commence until you are received by the New York State Department of Correctional Services; please see Penal Law § 70.30(1)."  *Id.* at ¶ 10.  Additionally, on August 16, 2012, Plaintiff moved to set aside his New York State sentence under New York Criminal Procedure Law § 440.20.  *See* Dkt. No. 65-1 at ¶ 15.  On January 9, 2013, Judge Wolfgang denied the motion, stating that "the relief the defendant is seeking is not available pursuant to CPL § 440.20.  His remedy is to seek relief against DOCCS pursuant to Article 70 or Article 78 of the Civil Practice Law and Rules if he is returned to the state on the detainer and is not immediately released."  *Id.* at ¶ 16.

As such, even though Plaintiff may have been able to file a formal motion seeking to have the detainer removed or to be resentenced by the state court, which eventually happened, he was provided conflicting instructions and repeatedly told that he could not seek such relief until he was returned to state custody pursuant to the detainer.  These facts make clear that the procedures used created a risk of erroneous deprivations of liberty and additional or substitute procedural safeguards would be of considerable value.

Third and finally, the Court must consider "'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail.'"  Here, any additional or substitute procedural requirements would not be substantial.  Upon receipt of a prisoner, Defendants acknowledge that they have procedures in place whereby personnel review the sentence(s) imposed and determine matters such as the conditional release date and maximum expiration date.  Providing training for the individuals responsible for making these determinations, along with individuals responsible for issuing detainers when an inmate is serving a separate sentence in federal or another state's custody would be almost no burden.  This training could simply entail instructing these individuals on the fact that the oral sentence imposed by the court is the only sentence recognized by the law, regardless of whether they believe the sentencing court had the authority to impose that sentence.  Thereafter, the training could include steps to be taken if they believe that the sentence was impermissible.

Additionally, in some instances, DOCCS has sought clarification from a sentencing judge after being alerted by a prisoner that his sentence was intended to run concurrently with a prior undischarged term of imprisonment.  *See Greaves v. State of New York*, 35 Misc. 3d 290, 292-93 (N.Y. Ct. of Claims 2011).  In *Greaves*, the plaintiff was held by DOCCS beyond his release date required by the commitment order because DOCCS determined that the relevant statutes required his new sentence be served consecutively to his prior undischarged term.  *See id.*  After the plaintiff brought his complaints to DOCCS' attention, DOCCS sought clarification from the sentencing judge, who confirmed the concurrent sentence as set forth in the commitment order. *See id.* at 293.  At this point, DOCCS released the plaintiff.

Although Defendants contend that there was no mechanism through which they could bring this issue to the attention of the state court, *Greaves* demonstrates that this argument is without merit.  Additionally, pursuant to Section 601-a of the New York State Correction Law,

DOCCS is specifically directed to bring any sentencing irregularities to the attention of the sentencing court so that the defendant can be resentenced to comply with the law.  Specifically, Section 601-a provides as follows:

> Whenever it shall appear to the satisfaction of the department based on facts submitted on behalf of a person sentenced and confined in a state prison, that any such person has been erroneously sentenced, it shall be the duty of the department to communicate with the sentencing court, the inmate's defense attorney and the district attorney of the county in which such person was convicted.  If upon investigation, the sentencing court, the defense attorney or the district attorney believes that the person has been so erroneously sentenced, the sentencing court, or the district attorney acting at the direction of the sentencing court, shall notify the department and arrange for the person to be heard and properly resentenced.  The department thereupon shall comply with any court order to produce such person from such prison and cause him or her to be taken before the court in which he or she was sentenced for the purpose of resentence.

N.Y. Corr. Law § 601-a.  Even assuming Plaintiff was not in DOCCS' custody in 2006 as Defendants contend, they fail to explain why this irregularity was not immediately brought to the state court's attention upon his return from federal custody.  Following this procedure could have significantly reduced the additional time Plaintiff was required to spend in custody.

In fact, Plaintiff has included with his response a letter from DOCCS to a state court judge.  In this letter, DOCCS informs the state court that the commitment indicates that the defendant's state sentence was imposed to run concurrently to a federal sentence.  *See* Dkt. No. 65-6 at 49.  DOCCS then indicates, however, that since the federal sentence had yet to be imposed, the state sentence will not commence until he is delivered to the custody of DOCCS. *See id.*  As such, contrary to Defendants' contentions, a procedure did exist by which they could take action on a defendant's behalf in the exact situation that Plaintiff faced.

18

Upon consideration of the factors in *Mathews*, the Court finds that Defendants are not entitled to summary judgment as to Plaintiff's Fourteenth Amendment Procedural Due Process claim.

**D.    Eighth Amendment**

Defendants contend that, even if their understanding of the law was incorrect, this misunderstanding is insufficient to show deliberate indifference.  *See* Dkt. No. 62-16 at 25-26. Plaintiff, however, asserts that the undisputed facts demonstrate that Defendants acted with a sufficiently culpable state of mind by improperly filing the detainer and then continuously disregarding his pleas for help.  *See* Dkt. No. 65 at 21-23.  Further, Plaintiff contends that Defendants continued to rely on policies and procedures to change his concurrent sentence to a consecutive one, despite being continuously instructed by the courts that such policies were impermissible.  *See id.* at 22-23.

The rights secured under the Eighth Amendment, to be free from cruel and unusual punishments, can be implicated where a plaintiff is subject to prolonged incarceration beyond his or her sentence.  *See Sudler v. City of New York*, 689 F.3d 159, 169 n.11 (2d Cir. 2012); *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (acknowledging that delayed release from incarceration can be the basis of an Eighth Amendment violation but finding that a five-day extension of incarceration does not inflict a sufficiently serious harm to establish that violation); *Brims v. Burdi*, No. 03 Civ. 3159, 2004 WL 1403281, *2 (S.D.N.Y. June 23, 2004).  The Eighth Amendment prohibits punishments that "'involve the unnecessary and wanton infliction of pain.'"  *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).  Punishments that are "grossly disproportionate to the severity of the crime" are prohibited by the Eighth Amendment.  *Id.* (citing *Coker v. Georgia*, 433

U.S. 584, 583 (1977)).  "One class of 'unnecessary and wanton' wrongs ... is those wrongs 'totally

without penological justification.'"  *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981))

(internal quotation marks and citations omitted).  Plaintiff's claim – that his incarceration

exceeded his sentence – has been found to belong to this class of wrongs.  *See id.* at 1109-10.

Therefore, the standard that the courts have applied to an Eighth Amendment claim for an

incarceration exceeding the sentence is the same that was articulated in *Estelle v. Gamble*, 429

U.S. 97, 104 (1976), for an Eighth Amendment violation arising out of inadequate medical care,

which is the standard of deliberate indifference.  *See Sample*, 885 F.2d at 1109 ("Detention for a

significant period beyond the term of one's sentence inflicts a harm of a magnitude similar to that

involved in *Estelle*"); *Calhoun*, 999 F.2d at 654 (citing *Sample*, 885 F.2d at 1109-10).  Therefore,

in order for Plaintiff to have sufficiently alleged a violation of his Eighth Amendment rights, he

must claim that Defendant acted with deliberate indifference to whether Plaintiff would suffer an

unjustified deprivation of his liberty.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.

1998); *Sample*, 885 F.2d at 1110.

There are two components of a Section 1983 claim for violations of the Eighth

Amendment.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Chance*, 143 F.3d at 702 (citing

*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  "First, the alleged deprivation must be, in

objective terms, 'sufficiently serious.'"  *Hathaway*, 37 F.3d at 66 (quoting *Wilson*, 501 U.S. at

298); *see also Calhoun*, 999 F.2d at 654 (finding that the alleged deprivation was not "a harm of a

magnitude" that violate's the rights secured under the Eighth Amendment).  In this case, the

objective prong of deliberate indifference is met.  "Detention for a significant period beyond" an

imposed sentence is a punishment *and* cruel and unusual.  *Sample*, 885 F.2d at 1107-1110

(finding an Eighth Amendment violation where there was a nine-month period of incarceration

20

beyond the plaintiff's sentence); *cf. Calhoun*, 999 F.2d at 654 (finding that five days of incarceration beyond the plaintiff's sentence does not a establish a sufficiently serious harm for Eighth Amendment purposes). Plaintiff alleges to have been unlawfully incarcerated from September 28, 2012 until July 19, 2013, nearly ten months. *See* Dkt. No. 65 at 23. The Court finds, and Defendants do not contend otherwise, that this is sufficient to satisfy the objective prong of Plaintiff's Eighth Amendment claim.

The second component of a claim for a violation of the Eighth Amendment is subjective, *i.e.*, "the charged official must act with a sufficiently culpable state of mind." *Hathaway*, 37 F.3d at 66 (citing *Wilson*, 501 U.S. at 298). A sufficiently culpable state of mind means "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he [or she] must also draw the inference." *Id.* ("[A] prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety") (internal quotation marks and citations omitted). In addition to knowing, a plaintiff must establish that the official "either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight." *Sample*, 885 F.2d at 1110. Deliberate indifference requires more than mere negligence, but it can include culpable recklessness, meaning "'a conscious disregard of a substantial risk of serious harm,'" or choosing "an easier and less efficacious" plan. *Chance*, 143 F.3d at 703 (quoting *Hathaway*, 99 F.3d at 553). "'Deliberate indifference has been demonstrated in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation.'" *Shorts v. Bartholomew*, 255 Fed. Appx. 46, 53 (6th Cir. 2007) (quoting *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)).

In *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993), the Third Circuit considered a Section 1983 claim by a prisoner who had been improperly held for six months beyond the completion of his sentence due the parole board's misinterpretation of his sentencing order. The court considered whether the prison officials had been put on notice and then simply refused to investigate Moore's complaint of sentence miscalculation. *Id.* at 686. The court found that the "parole board officials did not stand 'idly by' after Moore [had] raised his concerns about the parole board's interpretation of the disputed sentencing order but instead responded to Moore's complaints by beginning an inquiry that culminated in [the judge] clarifying his sentencing in writing." *Id.* at 687. Therefore, the court explained, "an investigation, however slow and incompetent [,] was conducted ... pursuant to standard parole board operating procedures. Significant was the fact that the parole board did not reject Moore's initial complaint outright, or suspend its search once it was begun." *Id.* Based on these findings, the court concluded that the defendants "were attempting to resolve the confusion over the sentencing order and were taking affirmative steps ... toward that end. We cannot say that this investigation was so inept or ineffectual that deliberate indifference [on] the part of the parole board officials may be inferred from the evidence here." *Id.* (footnote omitted).

In *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), the Ninth Circuit considered a Section 1983 claim by a prisoner who had been improperly held for five years beyond the completion of his sentence due to an incorrect calculation of his release date. *See id.* at 1354. The *en banc* court stated that "[d]etention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest," and found that Haygood "presented credible evidence that the defendants, after being put on notice, simply refused to investigate [the] computational error." *Id.* at 1354-55. The court

noted that Haygood had written a letter to the warden, alerting him of the error, but that the warden had passed it off to various records officers, who rejected the claim out of hand and denied further review until Haygood filed a habeas petition. *See id.* at 1353. The court concluded that "there was adequate evidence from which the jury could have found liability under the appropriate standard of 'deliberate indifference.'" *Id.* at 1355.

Additionally, in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989), the Third Circuit considered a Section 1983 claim by a prisoner who had been improperly held for nine months beyond the completion of his sentence due to a misapprehension by the state prison records officer that there was time remaining on the sentence. *See id.* at 1102-03. The plaintiff, Sample, protested his improper incarceration to his probation officer, various corrections officers, his state representative, and others. *See id.* at 1104-05. Sample made several inquires of Ernest Diecks, the state prison records officer, who at one point contacted the sentencing judge's chambers, but "admitted that he did nothing further regarding Sample's case." *Id.* at 1105. Sample also wrote to William Robinson, the Commissioner of the State Bureau of Corrections, but the letter was directed to a subordinate and Robinson never received it or even knew of it. *See id.* Additionally, Sample wrote to the Parole Board, and received a response that "confirmed Sample's view that his continued imprisonment was incorrect," which Sample sent to Diecks, whereupon Diecks ordered him released immediately. *See id.* Sample sued Diecks and Robinson, each in their individual capacities. The Third Circuit, citing *Haygood*, held that the appropriate standard for determining whether Sample had demonstrated an Eighth Amendment violation was that of "deliberate indifference." *Id.* at 1110 (citing *Haygood*, 769 F.2d at 1354-55). The court then set out a three-part test:

> To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's

> problem and thus of the risk that unwarranted punishment was
> being, or would be, inflicted.  Second, the plaintiff must show that
> the official either failed to act or took only ineffectual action under
> circumstances indicating that his or her response to the problem was
> a product of deliberate indifference to the prisoner's plight.  Finally,
> the plaintiff must demonstrate a causal connection between the
> official's response to the problem and the infliction of the
> unjustified detention.

*Id.* at 1110.  The court applied its three-part test to defendant Diecks and concluded that he had

knowledge of Sample's inquiry, Sample's complaint likely had merit, that there were procedures

in place for Diecks to inquire into the problem, that he failed to act, and that his failure delayed

the plaintiff's release by nearly six months.  *See id.* at 1112.

In the present matter, the Court finds that questions of fact exist that preclude granting

Defendants' motion as to Plaintiff's Eighth Amendment claim.  To the extent that Defendants

contend that Plaintiff's state sentence did not commence in 2006 because he was not in DOCCS

custody until 2013, the Court finds that it is without merit.  Initially, Defendants fail to explain

why DOCCS disobeyed the state court's directive to place Plaintiff in DOCCS' custody and why,

despite the lengthy time period between the two sentences, DOCCS did not commit Plaintiff to a

DOCCS' facility "forthwith."  The state court commitment order specifically directed that

Plaintiff was to be "committed to the custody of the . . . NYSDOCS until released in accordance

with the law, and being a person sixteen (16) years or older and *is presently in the custody of the*

*NYSDOCS*, said defendant shall remain in the custody of the NYSDOCS."  Dkt. No. 62-4 at 6

(emphasis in original).

Additionally, Plaintiff learned of the detainer in May of 2007, after it was sent to the BOP

by Defendant Davidson.  The letter enclosed a copy of the New York State commitment from

2006 and certified that it imposed a consecutive rather than a concurrent sentence.  *See* Dkt. No.

65-12 at 2-4.  This was in direct contrast to the plain terms of the commitment, which clearly

directed the state sentence to run concurrent to the federal sentence. *See* Dkt. No. 65-11. The record indicates that the decision to file the detainer and to indicate that the state sentence should run consecutive to the federal sentence was made after Defendant Davidson spoke with Defendant Holford. *See* Dkt. No. 65-12 at 4.

 After learning of the detainer, Plaintiff wrote several letters. Initially, Plaintiff wrote to Defendant Davidson asking her to remove the detainer. *See* Dkt. No. 65-14. Defendant Davidson, however, did not respond to the letter. *See id.*; Dkt. No. 65-10 at ¶ 13. Thereafter, in May 2009, Plaintiff asked the state court for assistance. In a July 9, 2009 letter, the court staff informed Plaintiff that he could challenge the legality of the detainer/state sentence when he is returned to state custody upon his release from the federal institution. *See* Dkt. No. 65-14 at 3. In June 2010, Plaintiff wrote a second letter to Defendant Davidson and informed her that the detainer was hindering his ability to receive his halfway house date. *See id.* at 5. In July 2010, Plaintiff received a response from Defendant Lennon, who informed him that the state court was not permitted to order his sentence to run concurrently to a yet-to-be imposed federal sentence and that his state sentence will not commence until he is received by DOCCS. *See id.* at 6. No mention was made of any action that Plaintiff could take to carry out the sentence imposed by the state court. *See id.* Then, on September 7, 2011, Defendant Lennon verified with the BOP that the detainer is in place because Plaintiff was subject to a consecutive state court sentence. *See* Dkt. No. 65-13 at 4. In 2012, Plaintiff filed a motion pursuant to CPL § 440.20 with the state court, but was informed in January of 2013 that he was not entitled to such relief and that he could seek relief pursuant to Articles 70 or 78 of the CPLR upon his return to state custody. *See* Dkt. No. 62-7 at 113-15.

Again, in February 2013, Plaintiff sent a letter to Defendant Davidson asking her to remove the detainer, which was to no avail. *See* Dkt. No. 65-14 at 10. Then, on February 11, 2013, Defendant Lennon provided the Erie County Sheriff's Department with the release authorization to provide to the BOP. *See id.* at 9.

Plaintiff was entitled to release from the federal facility on September 28, 2012 but remained in federal custody because of the detainer. *See* Dkt. No. 65-1 at ¶ 20. In March 2013, Plaintiff was released into the custody of the Erie County Sheriff's Department, pursuant to the detainer. *See id.* at ¶¶ 21-22. It was not until April 15, 2013, that Plaintiff entered a DOCCS-managed facility. *See id.* at ¶ 24. Plaintiff was not released from custody until July 23, 2013, after finally having been granted a form of the relief he had been actively seeking for the past six years.

Contrary to Defendants' assertions, they are not entitled to summary judgment as to Plaintiff's Eighth Amendment claim. The evidence clearly demonstrates that Plaintiff repeatedly drew Defendants' attention to the fact that he was likely to be held past his maximum expiration date because of Defendants interpretation of New York State law and contrary to the express terms of the sentence imposed by the state court, which is the only sentence recognized by the law. As discussed above, New York has in place mechanisms through which DOCCS can bring to the attention of a state court if they have reason to believe that a sentence was imposed in violation of the law, yet they failed to take any such actions despite Plaintiff's persistent efforts for them to do so.

Additionally, the Court finds unpersuasive Defendants' arguments that Plaintiff only entered DOCCS' custody on April 15, 2013. Plaintiff was entitled to be released from custody on September 28, 2012, yet it was not until February 11, 2013, that Defendant Lennon transmitted

the necessary paperwork to the Erie County Sheriff's Department for them to collect Plaintiff from federal custody.  Then, Plaintiff was not transferred to DOCCS facility until April 15, 2013. A finding that Defendants are only responsible for Plaintiff's detention beyond his maximum expiration from April 15, 2013 through his eventual release on July 23, 2013, would be patently unfair.  Whoever had actual custody of Plaintiff during this time has no bearing on the fact that the only reason Plaintiff remained in custody is because of the detainer lodged against him that ignored the sentence imposed by the state court and he remained in custody because Defendants ignored his repeated attempts to remove the detainer and then allowed him to remain in the federal facility for an additional five months before sending the Erie County Sheriff to collect him on the detainer.  These facts clearly demonstrate officials who knew of a substantial risk that Plaintiff would be incarcerated beyond his sentence expiration yet failed to act under circumstances exuding a deliberate indifference to Plaintiff's plight.

Finally, Defendants were all involved in determining Plaintiff's expiration date and the interplay between his state and federal "concurrent" sentences and the record indicates that questions regarding the imposition of a sentence and a detainer were appropriately addressed to them.  Without Defendants' actions and inaction, Plaintiff would not have been subject to the unjustified detention.  *See Watford v. Miller*, No. 09-cv-244, 2010 WL 1257812, *5-*7 (E.D. Wis. Mar. 26, 2010).  This is not a situation where Plaintiff has sued every DOCCS employee who may have been made aware of his plight regarding his sentence.  Rather, he has sued those individuals directly involved with the implementation of that sentence.  *See Sample*, 885 F.2d at 1110; *see also Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Based on the foregoing, the Court denies Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim.

27

**E.    Qualified Immunity**

"Qualified immunity protects government officials from liability where the officials'
conduct was not in violation of a 'clearly established' constitutional right." *Sudler v. City of New
York*, 689 F.3d 159, 173 (2d Cir. 2012) (quoting *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir.
2011)).  "Qualified immunity is an affirmative defense, on which the defendant officials bear the
burden of proof." *Id.* (citing *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012)).  "'If the
conduct did not violate a clearly established constitutional right, or if it was objectively
reasonable for the [official] to believe that his conduct did not violate such a right, then the
[official] is protected by qualified immunity.'" *Id.* (quoting *Doninger*, 642 F.3d at 345).
"Qualified immunity thus shields government officials from liability when they make 'reasonable
mistakes' about the legality of their actions, ... and 'applies regardless of whether the government
official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law
and fact[.]'" *Sudler*, 689 F.3d at 173 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct.
808, 172 L. Ed. 2d 565 (2009)) (internal quotation omitted).  "'In this respect, the Supreme Court
has observed that qualified immunity protects 'all but the plainly incompetent or those who
knowingly violate the law.'" *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley v.
Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

A right is clearly established, and qualified immunity does not apply, if (1) the right in
question was defined with reasonable specificity, (2) its existence was supported by case law, and
(3) given the existence of the right "a reasonable defendant would have understood that his or her
acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (citing *Shechter v.
Comptroller of City of N.Y.*, 79 F.3d 265, 271 (2d Cir. 1996)).  This analysis "turns on the
'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly

established at the time it was taken.'" *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).  The first two elements of this analysis are questions of law, while objective reasonableness is a mixed question of law and fact.  *See Kerman v. City of New York*, 374 F.3d 93, 108 (2d Cir. 2004).  Disputed material facts as to reasonableness should be submitted to a jury prior to the court making a final determination on qualified immunity.  *See id.* (citations omitted).

The Second Circuit has held that "[e]ven if this Court has not explicitly held a course of conduct to be unconstitutional, we may nonetheless treat the law as clearly established if decisions from this or other circuits 'clearly foreshadow a particular ruling on the issue.'" *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997)) (other quotation omitted); *see also Scott*, 616 F.3d at 105 (explaining that courts may look to other circuit courts of appeals to determine if a right is clearly established).  The Second Circuit has "suggested ... and other courts within and without this Circuit have held, that detention beyond that authorized by law may violate the Eighth Amendment." *Sudler*, 689 F.3d at 169 n.11 (citing *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993); *Sample v. Diecks*, 885 F.2d 1099, 1108-10 (3d Cir. 1989); *Haygood v. Younger*, 769 F.2d 1350, 1354-55 (9th Cir. 1985); *Rivera v. Carroll*, No. 07–civ–7847, 2009 WL 2365240, *6-*7 (S.D.N.Y. Aug. 3, 2009)).

In their motion, Defendants contend that it was not clearly established that commencing Plaintiff's state sentence upon his entry into DOCCS' custody violated Plaintiff's constitutional rights because neither *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), nor its progeny, apply outside of the post-release supervision context.  *See* Dkt. No. 62-16 at 27-32.

### 1. Earley I and II

In 2000, following a plea of guilty, Earley was sentenced to six years' imprisonment.[4] Neither prior to the entry of his guilty plea nor at his sentencing was he informed that he was subject to a term of post-release supervision ("PRS"), and his commitment order did not refer to PRS conditions.  DOCS administratively added a five-year period of PRS to his sentence.  After his release from prison, Earley violated the terms of his PRS and was reincarcerated.  Having challenged the PRS provision unsuccessfully in state administrative and judicial proceedings, Earley sought federal habeas corpus relief on the ground that the imposition of PRS administratively by DOCS violated his due process rights.  Although the district court initially denied Earley's habeas petition, the Second Circuit in *Earley I* concluded, applying the standard required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), that "clearly established Supreme Court precedent render[ed] the five-year PRS term added to Earley's sentence by DOCS invalid[.]"  *Earley I*, 451 F.3d at 76.

*Earley I* observed that "[s]eventy years ago, the Supreme Court established that the sentence imposed by the sentencing judge is controlling; it is this sentence that constitutes the court's judgment and authorizes the custody of a defendant."  *Id.* at 74 (citing *Wampler*, 298 U.S. 460, 56 S.Ct. 760).  The Circuit noted that *Wampler* differed from Earley's case, in that the condition imposed in *Wampler* was discretionary, whereas "state law required that Earley be sentenced to a PRS term."  *Id.* (emphasis added).  However, the court noted that *Wampler* had

> articulate[d] a broader holding: The judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment.  *Wampler* [therefore] provides clearly established Supreme Court precedent supporting Earley's claim.  *See also Greene v. United States*, 358 U.S. 326,

---

[4] The Court's recitation of the relevant background and holdings from *Earley I & II* is taken from the Second Circuit's decision in *Vincent v. Yelich*, 718 F.3d 157, 162-63 (2d Cir. 2013).

> 329, 79 S. Ct. 340, 3 L. Ed. 2d 340 (1959) (quoting *Wampler*'s
> assertion that "the only sentence known to the law is the sentence or
> judgment entered upon the records of the court").... The only
> cognizable sentence is the one imposed by the judge. Any
> alteration to that sentence, unless made by a judge in a subsequent
> proceeding, is of no effect.

*Earley I*, 451 F.3d at 75.

Noting that "[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody,'" the Second Circuit stated that "[t]he sentence imposed by the court on Earley was six years in prison. The judgment authorized the state to incarcerate him for six years and no more. Any addition to that sentence not imposed by the judge was unlawful." *Earley I*, 451 F.3d at 75 (citation omitted). The court concluded that "[t]he state court's determination that the addition to Earley's sentence by DOCS was permissible is therefore contrary to clearly established federal law as determined by the United States Supreme Court." *Id.* at 76.

The Circuit rejected the State's contention that because PRS was mandated by statute it was "necessarily part of Earley's sentence by operation of law." *Id.* Noting that New York law provided procedures for correcting sentences that were invalid as a matter of law and that "[t]he state ... could have moved to correct [Earley's] sentence through a judicial proceeding, in [his] presence, before a court of competent jurisdiction," the Second Circuit stated that "when DOCS discovered the oversight made by Earley's sentencing judge, the proper course would have been to inform the state of the problem, not to modify the sentence unilaterally." *Earley I*, 451 F.3d at 76. As such, the case was remanded for the district court to grant Earley's habeas petition, if timely, because it was "determined that New York's modification of Earley's sentence violate[d] clearly established federal law." *Id.* at 77.

In *Earley II*, the Second Circuit denied the State's petition for rehearing in which the State argued that "New York law automatically includes a period of PRS in every determinate sentence," and that "New York courts regularly fail to inform defendants of mandatory PRS terms but consider them part of those defendants' sentence nonetheless." *Earley v. Murray*, 462 F.3d 147, 148-50 (2d Cir. 2006) ("*Earley II*"). The court reiterated that, "[w]hen the sentence as imposed by the sentencing judge is purportedly altered to reflect something other than the sentence imposed, the source of that alteration is immaterial. Whether it is DOCS administrators or the operation of New York law that works the alteration, the alteration is of no effect." *Id.* at 149. "The fact that New York law mandates a different sentence than the one imposed may render the sentence imposed unlawful, but it does not change it. *The sentence imposed remains the sentence to be served unless and until it is lawfully modified*." *Id.* (emphasis added). The Second Circuit concluded that, "[w]hatever conceptualization respondent-appellee has about the function of New York Penal Law sections 70.00 and 70.45, they cannot operate to undermine protections contained in the Federal Constitution. And as *Wampler* requires the custodial terms of sentences to be explicitly imposed by a judge, any practice to the contrary is simply unconstitutional and cannot be upheld." *Id.* at 150.

More recently, the Second Circuit has commented that the *Earley I* decision afforded the State two alternatives: "either to have [the plaintiffs] resentenced by the court for the imposition of PRS terms in a constitutional manner or to excise the PRS conditions from their records and relieve them of those conditions." *Vincent v. Yelich*, 718 F.3d 157, 172 (2d Cir. 2013). As to the first option, resentencing, the Circuit made clear that this was an available option only if DOCCS officials acted with "objective reasonableness," *i.e.*, without unreasonable delay, to discharge the affirmative duty recognized in prior decisions. *See id.* at 177; *see also Hassell v. Fischer*, 879

F.3d 41, 48 (2d Cir. 2018).  Elaborating on the first alternative, the court noted that it was among the duties of the defendant "to seek a resolution of the PRS issues among DOCS, the prosecutors, and the courts by attempting, through direct or indirect communication with the courts, to have persons who should, under New York substantive law, have had PRS imposed as part of their sentences, resentenced by the court."  *Id.* at 48-49.

### 2. Application

In the present matter, the Court finds that Defendants are entitled to qualified immunity for any conduct that occurred in late 2006 through when the detainer was lodged in May of 2007. It was not "clearly established" for qualified immunity purposes that Defendants' conduct would have violated Plaintiff's clearly established rights.  Assuming that *Earley* and its progeny apply to the present matter, *Earley* was decided in the context of a challenge brought pursuant to the AEDPA, not a civil rights action.  In *Scott v. Fischer*, the Second Circuit specifically noted that the conclusion that a legal proposition is "'clearly established' for purposes of its application by professional state court judges" pursuant to the AEDPA does not mean that it is "'clearly established' in the qualified immunity context, which governs the conduct of government officials who are likely neither lawyers nor legal scholars."  *Scott v. Fischer*, 616 F.3d 100, 106 (2d Cir. 2010).  The court went on to hold that *Wampler*, standing alone, was insufficient to establish clearly the right not to serve a term of PRS not imposed by sentence (the right at stake in *Earley*) for purposes of qualified immunity.  *See id.* at 106-07.  The court further noted that, post *Earley*, New York State courts remained divided on the issue of whether *Earley* itself sufficed to clearly establish the unconstitutionality of administratively imposed PRS for a reasonable New York State correctional official.  *See id.* at 107.  It was not until 2008 that the New York Court of Appeals held that administrative imposition of PRS by DOCCS was contrary to law.  *See id.*

(citing *Garner v. N.Y. State Dep't of Corr. Servs.*, 10 N.Y.3d 358 (2008); *People v. Sparber*, 10 N.Y.3d 457 (2008)).  Notably, however, these decisions from the Court of Appeals did not address whether the administrative imposition of PRS was unconstitutional; the decisions merely held that New York State law required that it be imposed orally at sentencing.  In light of the judicial confusion surrounding the issue, the Second Circuit found qualified immunity continued to shield state officials acting pursuant to the statute at issue.  *See id.* at 107-08 (citations omitted).  Based on the foregoing, the Court finds that, insofar as it relates to the initial lodging of the detainer, it was not clearly established during the relevant time that Defendants' conduct violated Plaintiff's rights under the Eighth or Fourteenth Amendments.

Defendants are not, however, entitled to qualified immunity for their later conduct.  By 2009, and absolutely no later than 2010, it was clearly established that a criminal defendant had the right not to be imprisoned for a significant period of time after he or she should have been released pursuant to the terms of the sentence.  The Court acknowledges that Defendants assert that *Earley* and its progeny did not establish this right because those decisions related solely to the administrative imposition of PRS that was not ordered by the court.  However, the Second Circuit has held that "[e]ven if this Court has not explicitly held a course of conduct to be unconstitutional, we may nonetheless treat the law as clearly established if decisions from this or other circuits 'clearly foreshadow a particular ruling on the issue.'"  *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (quoting *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010)) (other quotation omitted).

As noted, the Second Circuit in *Earley II* specifically held "[t]he fact that New York law mandates a different sentence than the one imposed may render the sentence imposed unlawful, but it does not change it. *The sentence imposed remains the sentence to be served unless and*

*until it is lawfully modified.*" *Earley II*, 462 F.3d at 149 (emphasis added).  In this case, the state court specifically ordered Plaintiff's state sentence to run concurrent to his soon-to-be imposed federal sentence.  The fact that Defendants may have believed that the state court could not legally impose that sentence did not give them the authority to detain Defendant beyond the conclusion of his federal sentence.  Under *Earley* and its progeny, Defendants only permissible course was to release Plaintiff or bring the issue to the attention of the district attorney, Plaintiff's criminal counsel, and/or the state court.

Finally, as addressed in more detail above, courts both inside and outside of this Circuit have indicated that "officials have a duty to act, commensurate with their positions, when they have reason to believe someone may be unlawfully confined." *Todd v. Hatin*, No. 2:13-cv-05, 2014 WL 5421232, *7 (D. Vt. Oct. 24, 2014) (citing *Sample*, 885 F.2d at 1112; *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1989); *Rivera*, 2009 WL 2365240, at *5; *Brown v. Coughlin*, 704 F. Supp. 41, 45 (S.D.N.Y. 1989)).  During the relevant time period, Defendant deSimone was Associate Counsel in the Office of Sentencing Review.  *See* Dkt. No. 62-5 at ¶¶ 4-6.  Defendant Holford was the Coordinator in the Office of Sentencing Review and was responsible for, among other things, calculating release dates and training others on how to calculate release dates.  *See* Dkt. No. 62-4 at ¶¶ 3-4.  Defendant Davidson held the position of Coordinator of Inmate Movement and was responsible for processing sentence and commitment papers on interstate inmate cases.  *See* Dkt. No. 62-2 at ¶¶ 3-4.  Finally, from 2009 through 2014, Defendant Lennon held the position of Inmate Records Coordinator 1 in the Office of Classification and Movement and was responsible for handling immigration and interstate cases.  *See* Dkt. No. 62-3 at ¶¶ 3-4.  Given the responsibilities of these named Defendants, it is clear that

they had a duty to act when they were repeatedly informed that Plaintiff was likely to be unlawfully confined upon his return to state custody.

The Court may reach a different result if this was a case where the state court was silent as to whether Plaintiff's sentence was to run concurrently or consecutively to the yet-to-be imposed federal sentence. In such a situation, Defendants would not be disregarding the clear mandate of the state court based on their own understanding/interpretation of the relevant law. Here, however, the state court clearly ordered that Plaintiff's state sentence was to run concurrent to the federal sentence and that Plaintiff was to be returned to DOCCS' custody upon the imposition of his state sentence. Regardless of the propriety of the state court's sentence, Defendants were required to abide by the judgment of the court because, as discussed, it is well settled that a jailor's authority to confine a prisoner begins and ends with the sentence pronounced by the judge. *See, e.g., Hill v. United States ex rel. Wampler*, 298 U.S. 460, 465 (1936) ("'The prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence'"); *Earley*, 451 F.3d at 74 ("[T]he sentence imposed by the sentencing judge is controlling; it is the sentence that constitutes the court's judgment and authorizes the custody of a defendant"); *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir. 1974) ("'It is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence.'.... The sentence given [the defendant] in open court by the trial judge was the only valid sentence imposed"); *Kennedy v. Reid*, 249 F.2d 492, 495 (D.C. Cir. 1957) ("The pronouncement of sentence constitutes the judgment of the court. The authority for the execution of the court's sentence is that judgment").

Accordingly, Defendants' motion for summary judgment is granted in part and denied in part.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 62) is **GRANTED in part and DENIED in part**;[5] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 16, 2018
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[5] Defendants' motion for summary judgment is only granted as to the claims relating to the initial lodging of the detainer in May of 2007.